Argued March 20, affirmed April 3, rehearing denied May 29, 1928.

## S. H. SHAVER ET AL. *v.* WATTS EXCAVATOR CO.
### ET AL.

(265 Pac. 773.)

Novation—Obligation Under Original Contract for Manufacture of Machine Held Under Evidence to have Been Extinguished by Acceptance and Performance of New Contract Precluding Foreclosure Under Original Contract.

1. In suit to foreclose lien on machine, evidence that plaintiff manufacturer quit work on machine when defendant failed to meet payments due under original contract, that all parties desired to arrange for completing machine, and that parties entered into new contract stipulating price for which plaintiff would complete machine, which sum was paid to plaintiff, showed intention by all parties to extinguish original obligation, and acceptance by all parties of new obligation precluding foreclosure under original contract.

Novation—Assent of All Parties to Agreement is Essential to Novation and may be Either Express or Implied.

2. Assent of all parties to agreement is always essential to novation, but assent may be shown to be either express or implied.

---

Novation, 29 Cyc., p. 1131, n. 14, 1132, n. 19, p. 1139, n. 68.

1. Secondary agreement abrogating, altering or supplementing prior contract as a novation, see note in L. R. A. 1915B, 59. See, also, 20 R. C. L. 363.
2. See 20 R. C. L. 367.

From Multnomah: ROBERT G. MORROW, Judge..

Department 2.

This is a suit brought to foreclose a lien upon a machine known as a Watts Excavator. From a decree dismissing the complaint, plaintiffs appeal.

AFFIRMED.   REHEARING DENIED.

For appellants there was a brief over the name of *Messrs. McGuirk & Schneider,* with an oral argument by *Mr. Walter T. McGuirk.*

For respondents there was a brief over the names of *Mr. George W. Caldwell* and *Mr. W. F. Magill,* with an oral argument by *Mr. Caldwell.*

BROWN, J.—During the times mentioned herein, S. H. Shaver and J. Gulley, plaintiffs, operating under the firm name of Thayer-Shaver-Gulley Machine Co., were conducting a business as general machinists, repairmen and builders of machines in the City of Portland, Oregon, and defendant Watts Excavator Company was a corporation organized under the laws of the State of Oregon, for the purpose of manufacturing and selling an excavating machine known as the Watts Excavating Machine or Watts Excavator.

On or about October 17, 1921, plaintiffs entered into a contract with the Watts Excavator Company for the construction of one Watts Excavator, which agreement reads:

"Portland, Oregon, October 17, 1921.
"Watts Excavator Company,
    "Portland, Oregon.
"Gentlemen:
"We, the undersigned, hereby agree to build one Watts Excavator, as per drawings furnished, according to the following terms and conditions:

"We agree to furnish all machinists, and do all work done by machinists at $1.40 per hour, and all helpers at $1 per hour. All material to be charged at exact cost to us, plus five per cent. Blacksmith work to be $3 per hour when using big fire and hammer, and $2.50 per hour when using small fire and hammer.

"It is further understood and agreed that the Watts Excavator Company shall have the right to inspect the work at any and all times while being built, also to have any man on their work taken off the work if not satisfactory. All time cards and records shall be turned over to the Watts Excavator Company for their information, as well as all bills for material used in the construction.

"Payments to be made as follows:

"$1,000 is to be paid when this proposition is accepted, and all material and labor shall be paid for every fifteen days, as per statements rendered.

"We further agree to complete said work in 60 days from date hereof, subject to strikes and unforeseen accidents.

"It is understood that all patterns and gears are to be furnished by the Watts Excavator Company.

"Respectfully submitted,

"THAYER-SHAVER-GULLEY MACHINE CO.,

"By J. GULLEY, Prest.

"The above proposition accepted this 17th day of October, 1921.

"WATTS EXCAVATOR COMPANY,

"By M. E. WATTS, Vice-Prest."

Prior to the execution of this contract, Watts Excavator Company had contracted to sell a Watts Excavator to the Johnson Contract Company for the sum of $10,000, and it was that machine that the plaintiffs undertook to manufacture, with full knowledge of the agreed sales and purchase price made and existing between the Johnson Contract Company and Watts Excavator Company.

There is no controversy concerning the fact that the plaintiffs, in pursuance of the foregoing contract, commenced the construction of a Watts Excavator and continued in the construction thereof until about November 15, 1921. Prior to that date, the defendant Watts Excavator Company had paid to plaintiffs $3,000 in cash on account of the construction of the excavator. On November 15, 1921, the plaintifls ceased work upon the machine and refused to proceed further without some assurance that money would be forthcoming to pay for the labor and material required to finish the excavator. The company then undertook to sell stock to raise funds with which to meet the construction contract, but failed. Upon such failure, the company entered into an agreement with defendants J. C. Williams, Orville R. Williams, A. L. Williams, D. C. Williams and J. M. Ayres, whereby it was agreed that these defendants, in consideration of the transfer to them by M. E. Watts, the inventor of the Watts Excavator and owner of one half of the stock of Watts Excavator Company, of a portion of the stock in that company, would cause the excavator to be completed and take title thereto. In pursuance of the agreement between the company and the last named defendants, these defendants entered into a contract with the plaintiffs, which reads:

"Portland, Oregon, Dec. 16, 1921.

"Thayer, Shaver and Gulley Machine Co.:

"We, the undersigned, agree to pay you certain sums of money, as follows:

"$1,000, upon the signing of this agreement, and a further sum of $4,000 on January 2, 1922, and a further sum of $1,000 when you have finished construction of that Watts Excavator now under construction in your shop.

"We, Thayer, Shaver and Gulley Machine Co., agree to start work immediately and finish said machine as fast as possible; it being further agreed that we * * agree to take 4,000 shares of the common stock of the Watts Excavator Company at par value as a part of the cost of building said machine.

"It is also mutually agreed by all the parties that the said Thayer, Shaver and Gulley Machine Co. are to have the exclusive right to build all excavators to be manufactured on the Pacific Coast during the year 1922.

"It is also mutually understood that the above company, Thayer, Shaver and Gulley Machine Co., are to hold title to the said excavator herein mentioned until they are fully paid, and that they will not release title thereto without the consent of J. C. Williams, Orville R. Williams, D. C. and A. L. Williams and J. M. Ayres; it being understood, however, that as soon as the said Thayer, Shaver and Gulley Machine Co. have been fully paid, * * they are to turn over the said machine to the said J. C., Orville, D. C. and A. L. Williams and J. M. Ayres, or to any one else that they may designate.

"Upon the signing of this agreement the same becomes a binding agreement upon all parties herein concerned.

> "THAYER, SHAVER & GULLEY MACHINE CO.,
> "By S. H. SHAVER, Manager.
> "J. M. AYRES.
> "J. C. WILLIAMS.
> "ORVILLE R. WILLIAMS."

The record shows that, pursuant to the contract just quoted, the plaintiffs completed the construction of the excavator; that, as partial payment for the construction thereof, there was delivered to and accepted by the plaintiffs 4,000 shares of the common stock of Watts Excavator Company; that they were paid $5,000 in cash and were tendered the final payment of $1,000 in pursuance of the terms of the second con-

tract, but that they refused to accept this $1,000 as a final payment on the ground that the machine was constructed under the provisions of the original contract, and that there was a balance due of $4,158.32.

Did the second contract extinguish the original contract and become a substitute therefor? This is the chief question involved in this case.

The judge before whom this cause was tried inquired of counsel for the plaintiffs:

"Upon what theory are you bringing this suit in equity?

"Mr. McGuirk: The theory is, your Honor, we are asking to impress a lien upon this machine in accordance with the original contract entered into on the 17th day of October, 1921, and which contract was carried on for a considerable time until there was a running short of funds, at which time there was a suspension of work and an attempt to raise more money, and subsequent to that time an oral agreement and supplementary to this agreement on October 17, 1921, was entered into between the Watts Excavator Company and Williams and Ayres in relation to limiting the completion of this machine to $6,000 in cash and $2,000 in stock; the machine to be completed according to the original contract, and the different parts of it, with the addition of what I have just said, and that it was to be completed according to the plans and specifications as they then existed at the time that this oral agreement was made on or about December 8th or 9th as I recall it.

"Mr. Bowerman: That is what his client testified to.

"The Court: * * I confess I am up in the air. I don't see where you are going to get off on that theory.

"Mr. McGuirk: Nothing more, your Honor, than the Williamses and Ayres are, according to our contention, simply our sureties to the extent of $6,000."

S. H. Shaver, one of plaintiffs, testified as follows:

"Q. What was that agreement? A. That agreement was to finish the Watts machine in our shop at that time according to the contract we had with the Watts Excavator Company, and according to the plans and specifications furnished by them.

"The Court: For how much money? A. $6,000 cash, and $2,000 in stock."

This witness testified concerning the making of the contract of October 17, 1921, and the entering upon the construction of the excavator until they had received $3,000 for labor and material that had gone into the construction work of the machine, but that when the next money came due Watts Excavator Company was unable to meet its payment, and that work on the machine was temporarily suspended. He further testified:

"Well, * * Mr. Ayres and Mr. Watts come to us and told us that they had not been able to raise any money in selling the stock, and that they was talking with Mr. Williams and Mr. Ayres to try and finance the Watts Excavator Company to finish building this machine, and they asked us at that time what we would complete the machine for, and we said to Mr. Watts and Mr. Ayres and Mr. John Williams that we would complete the machine for $6,000 in cash and $2,000 worth of the Watts Excavator Company's stock, and we would complete the machine according to drawings furnished us. That was our understanding all the time. * *

"Q. And you knew the contents of this contract? A. Yes, sir, I certainly did.

"Q. What was the purpose then of entering into this contract? A. The purpose of entering into that agreement was to secure us the finance for completing the Watts Excavator machine. * *

"Q. Now, as I understand you, Mr. Shaver, you went along with this work for a time, then they ran

out of money, then they began talking about some new deal? A. Yes, sir, some new arrangement.

"Q. And you had, as you say, an oral agreement with them where you were to finish the machine * * for $6,000 in money and some stock? A. Yes."

He testified that the second contract was written in the plaintiffs' office; that he had signed it on behalf of his company, but that he refused to accept it as a binding agreement until it was signed by all the parties concerned. He further testified:

"Q. If they had signed it, that would have been your contract? A. It certainly would have been. * *

"Q. And if they had signed it there would have been no question about it? A. I don't think there would. * *

"Q. If these gentlemen had subscribed their names to this agreement, this is what you would have agreed to do, isn't it? A. Yes, sir."

Exclusive of exhibits, the record in this cause consists of 848 pages of oral testimony, and is replete with evidence to the effect that a second contract was entered into. It further shows that that contract was reduced to writing and has been fulfilled by the several interested parties, notwithstanding that some of the parties thereto failed to sign it.

1. We are convinced by the evidence of record that it was the intention of both the plaintiffs and the defendants to extinguish the original obligation by the adoption of a substitute therefor. From an examination of the record, we find this situation:

At the time of establishing the contractual relationship as set out in the second agreement, the plaintiffs had quit work upon the excavator because their debtor, the Watts Excavator Company, was without funds, could not dispose of its stock, and was utterly without credit. The plaintiff creditors were in pos-

session of an unfinished machine that was of but little value in that state. The debtor could not pay. The creditor could not collect. Both were searching for an honorable way out. The plaintiffs knew, the representatives of the Watts Excavator Company knew, and, in fact, all the interested parties knew, that the machine that was to be supplied to the Johnson Contract Company for $10,000 would never be delivered unless additional parties, with additional resources, joined in the contract. Watts, the inventor of the machine, and his company, and the plaintiffs, who hoped to become the future builders of like machines for the Watts Excavator Company, were all interested in making the new contract for the procurement of additional funds with which to finish the machine. The evidence shows that the plaintiffs named the price for which they would complete the construction of the excavator. Their offer was accepted by the defendants, and the terms of the second contract were fulfilled by the debtors. We find an express or implied assent to the new contract by all the parties. We find that they all assented to the extinction of the obligation between the Watts Excavator Company and the plaintiffs, and, in its stead, we find a new obligation accepted by all.

2. The assent of all the parties to an agreement is always essential to a novation. This assent, however, may be shown to be either express or implied. As bearing on this subject, note the following from 29 Cyc. 1132:

"It is not essential that the assent to and acceptance of the terms of novation be shown by express words to that effect, but the same may be implied from the facts and circumstances attending the transaction, and the conduct of the parties thereafter."

To like effect, see 3 Williston on Contracts, 1865–1875, incl.; 21 Am. & Eng. Ency. of Law (2 ed.), 660–676, incl.; 20 R. C. L. 359–375, incl.

This case is affirmed.

AFFIRMED.    REHEARING DENIED.

RAND, C. J., and BEAN and BELT, JJ., concur.